Hemphill, Ch. J.
The first ground was not insisted upon in the argument, and the irrelevancy of the evidence objected to in tire record will appear in the course of the discussion.
The principal questions arise upon the exceptions to the instructions given the jury. These instructions I do not propose to consider separately, but will proceed to state the principles of law applicable to the facts of the case; and-from these it will appear that all the charges were cither intrinsically erroneous, or, if true, they were such only as abstract propositions, unmodified by the facts of the particular ease.
The arguments of counsel evince a commendable degree of research into the doctrines, as well of the Spanish as of the common law, illustrative of the rights and privileges of minors, of the effects of their disabilities upon their acts done during 'minority, and what acts of recognition or acquiescence after the infant attained majority shall be deemed a confirmation of their acts during nonage. But as at the date of the deed to Chumney the laws of Spain were-in force, the rights of the infant and the plaintiffs claiming under him must be determined by the principles of that system of jurisprudence. This is an acknowledged general principle. It lias, however, the additional sanction of legislative authority, which, by the 6th section of the act to provide the mode of trying titles to lands, declares “that this act shall not be so construed as to-alter, impair, or to take away the rights of parties, as arising under the laws in force before the introduction of the common law, but the same shall be decided by the principles of the law or laws under which the same accrued, or by which the same were regulated or in any manner affected.” I shall not, therefore, extend my inquiries beyond that system of laws. An investigation into and a comparison of the rules which pervade both systems is not necessary to the decision of this case, although such collation would be wanting neither in interest nor instruction. One fact would be abundantly evident on such *256 inquiry, viz: that the rules of the Spanish monarch, whether we consider the sound philosophy on which they are founded or their intrinsic quality, would, to say the very least, not suffer in comparison with those which in the common law are sanctioned by judicial wisdom and authority.
The property in controversy is real, or immovable, and a sale of such property belonging to a minor, without just cause and the legal formalities, is, in general, deemed in law null and void. By law 18th, tit. 16. Partidas Gth, it is declared “that guardians ought neither to give away, sell, or alienate any immovable thing belonging to' the minor, unless to pay the. debts left by his father, or to marry one of liis sisters or the minor himself, or for some other legal indispensable cause; and even then not without the authorization of the judge, which the latter ought t.o grant if. he conceive that the alienation is to be made for any of the above, purposes.” Thus far the law is translated by Moreau and Carleton. The original contains further regulations, one of which prohibits the house in which the minor was born and 'in which his father or .grandfather had lived, and also family servants, from being sold. The law GO, tit. 18, b. 3 recognizes the assent of the curator and the authority of the judge as essential to a valid alienation of the real estate of the minor, and gives tlie proper form-of a conveyance. The previous law, or law 50, gives tlie form •of a conveyance where a sale is made by the minor himself, being over fourteen years of age. The substance of the laws in relation to the incapacities of minors, and the manner in which a valid alienation of their property can be affected, is briefly expressed by Febrero, lib. 2, tit. 4, cap. 2, paragraph 26, or 23 of the Mexican edition. The following is substantially his language : minors can neither sell nor piurchaso without the assent of their curators. That a sale of the real or valuable (preciosos) personal property of the mino.r may be valid, the curator must give liis assent, and the sale must receive judicial sanction, founded on proof of its utility or grave necessity. For the sale of all other movable property, the assent of the curator will be sufficient; and without the intervention of this solemnity the contract will be null, and the minor can recover the property from any possessor. (Vide Sala, lib. 1, tit. 7, sections 37, 38.) In lib. 2, tit. 4, cap. 29, or 28 of the Mexican •edition, section 2, the author, Febrero, extends his observations on the subject, and after treating of the necessity of the curator’s assent to the validity of a •minor’s acts, the effect of the minor’s oath, &c., he continues: “But if there !be no curator, the contract made by the minor himself shall be equally valid, whether it be with or without oath, and he shall enjoy the like benefit. If he desire to sell his movables, not valuable, (preciosos,) although they may not be •of his patrimony, and there be a curator, the latter must, in writing, assent to the alienation; but if there be no curator, and the minor is over fourteen years •of age. the sale will be valid without such assent, provided there be no lesion; but the intervention of judicial sanction is essential to a valid alienation of the minor’s real or valuable personal property,” &c.
In lib. 3, tit. 4, cap. 2, from paragraph 30, (vol. 5, p. 371, of the Mexican edition,) the same subject is more copiously treated by Ihe author. In the appendix to this chapter, under the head o£ third privileges enjoyed by minors, it is said.“ that the contract of adult minors, without the assent of their curators, is. ipso jure, null if it be prejudicial to the minors, but if beneficial it is valid, .and the other adult contracting party will be bound. If there be no curator the contract of the minors will be valid, although if they suffer lesion they may demand restitution.”
* It will not be necessary to cite authorities further on this point. There is no evidence that the minor had any curator or guardian, and the act of sale to •Chumney is not affected by tlie want, of his assent. If the assent of the guardian were not a totally immaterial circumstance in this controversy, it might, with great plausibility, be contended that the minor’s act acquired strength .and support, from tlie assent of liis mother, a guardian, who, by the laws of nature, would feel the deepest solicitude for his welfare, whose vigilant *257 affection would not slumber, and who might mistake but could not betray the interests of her child.
But the, act of the minor is wanting in the formalities of law, viz, the sanction of a court, which is requisite in the sale of his real estate, aiul is, consequently, null and void; though I do not understand that by the laws of Spain the acts of minors, wanting in legal formalities, would in all cases be, ipso jure, void. For instance, if a minor represent himself to be of age, and from his person he appear to be so, any contract made witli him will be valid ; for the law protects those who are defrauded, and not those who commit fraud. (Law 6, tit. 19, Partidas 6th.) The terms of the proposition embraced in this law necessarily exclude the idea of the intervention of either curator or judge in such contract.
Having determined that the sale to Chumney was invalid, so far as it was the act of the minor, we will now inquire whether the acts of the latter, after at tabling full age, were such as amounted to a confirmation of the contract. For though the act be deemed null in law, yet it is susceptible of validation, by either the express or tacit approbation of the minor after attaining majority. That such is the rule of law, will be manifest from the authorities. Febrero, in treating of the privilege of restitution, states that such privilege cannot be claimed by a minor when he has either expressly or tacitly approved the contract made in his minority; that is, when, being apprised of the lesion, he has permitted the term of prescription to expire without demanding restitution, or by doing acts after liis majority repugnant to the nullity or lesion in the contract, or such as necessarily involve its ratification ; for the intention to be inferred from an act is more powerful than that which is expressed in words.
Another observation of the author is, that “if the minor, having arrived at majority, ratify the contract made in minority, none of the formalities required by law to give validity to the minor’s contract will be necessary for ils confirmation, as well against the vice of nullity as of lesion; but if the ratification lie made in minority, it will not avail without the observance of such formalities; for the ratification of a void contract is a new contract.” And he further says, that if the minor during nonage or after majority ratify the contract which contains lesion and nullity combi lied, the vice of nullity will he cured by such ratification, but his right for lesion in the contract will still remain, unless after majority this be renounced. (Febrero, vol. 5, Mex. ed., p. 380.)
From these citations it appears that acts of the minor after majority, from which approbation may be inferred, will be a sufficient recognition of the contract. Now, what are the acts of the minor in the case under review? ne became of age in 1840; and his deed, in disaffirmance, was not made until nearly six years afterwards. This long acquiescence (irrespective of any other fact in the case) is strong if not conclusive evidence of assent to iiis first conveyance. Whether it be so"or not, it is not, material in this case to decide. There are other acts of botli express and tacit approbation and assent. The letter of the minor, written nearly a year after he became of age, very clearly recognizes tile contract. He speaks in it of the land he sold to Chnmney, gives him all ihí information he desires as to charges on the land; offers to satisfy out of his own pocket a small claim to pay the expenses of division; states that he has sold another portion, but still retains 937 acres of the same tract; and informs Mr. Chumney that the documents which lie, Chnmney, liad furnished the writer would enable him to procure a patent. This portion of the letter is ob-. score, but is explained by reference to the testimony, which proves that a portion of the consideration received by Lockhart from Chumney was a certificate for 1,280 acres of land. There was no evidence that Lockhart lias not disposed of or that he does not still own the said certificate; at least none that lie offered to restore it to his vendee, Chnmney. The retaining of such certificate after attaining majority is evidence of approbation ‘ of the contract by *258 the minor. The witness Friar also testifies to an express approval by the minor, one or two years after the sale. He then spoke of the purchase by Chumney as an act of kindness; that the money thus received saved himself and his mother from starvation ; and that lie was well satisfied with the sale. The minor has, therefore, both by acts and words, tacitly and expressly ratified the. sale made in minority.
In Chesneau’s Heirs v. Sadler, (10 Mart. R., 726,) a case which is full of instruction, and in point upon the questions raised in this record, the sanction oE the minors to an illegal alienation oE their property their tutor was deduced from the act of their having claimed property which liad been received in exchange on such illegal alienation. (3 Mart. R., 457; 6 N. S., 18.)
It will be seen from the principles adduced from tiie authorities that tiie instructions were erroneous. The first, as an abstract proposition, may be deemed consistent with law, but it was not applicable under the facts of the case.
The evidence as to the comparative value of the land was totally irrelevant. No allegation of fraud or unfairness was set up by petitioner, if there liad been a division between mother and son, and this was unequal, such inequality may be the subject of compensation between themselves, hut cannot inflict loss upon others. Had the best half of the league been sold by mother and son to Chumney, how can the rights of Chumney he affected by such circumstance ? The vendors liad the right to sell or retain any portion they pleased. They have since sold a large portion of the balance to other vendees; and these latter might refuse payment of the purchase-money on tiie ground that tiie best half of the land iiad been previously sold to some third person, and this with as much propriety as the vendors themselves can claim a rescission of tiie first sale on the same ground.
How far the rights and powers of the minor may have been affected by such portions of the Louisiana codes as were then in force, was not discussed in tiie argument. The doctrinos held by the courts of that State on the subject of ratification of acts done during minority, coincide with those found in Spanish codes and commentators. (Vide 6 La., 601.) In Vaughan v. Christie, (3 Annual R., 328.) it was held that a sale made of a minor’s property without the formalities prescribed by law was absolutely mill, but may be ratified by the minor after majority, expressly or by implication; that absolute nullities resulting from defects of form are embraced within the general provisions of article 3507 of the civil code; that absolute nullities were of two kinds, those resulting from stipulations derogating from the force of laws made for tiie preservation of public order or good morals, and those established for the interest of individuals. The former are not susceptible of ratification, and the prescription of five years, under article 3507 of the code, is inapplicable to them; but if by subsequent dispositions of law or by the succession of time such stipulations cease to be illegal, the}' may from that time be ratified and become subject to the prescription of article 3507. Thus the partition of a succession made before tiie succession is open may become valid by ratification or by lapse of time after tiie opening of the succession. But in relation to .absolute nullities established for the interest of individuals, tiie rule is as to onerous contracts, without exception, that the party in whose favor they are established may ratify the contracts, either expressly or impliedly; and that in all cases of executed contracts susceptible of tacit ratification, a presumption of ratification Juris et de jure results from silence and inaction during the time fixed for prescription.
Tiie judgment is ordered to be reversed, and cause remanded for a new trial.
Judgment reversed.
258